## PITTSBURGH FEDERATION OF TEACHERS, LOCAL 400, Plaintiff,

v.

## Elinor LANGER, et al., Defendants.

### Civ. A. No. 81–1546.

United States District Court,
W. D. Pennsylvania.

Aug. 31, 1982.

Harry J. Gruener, Louis B. Kushner, Pittsburgh, Pa., for plaintiff.

Persifor S. Oliver, Jr., Pittsburgh, Pa., for defendants.

## MEMORANDUM

McCUNE, District Judge.

This is an action brought under 42 U.S.C. §§ 1983 and 1985, 29 U.S.C. § 794 (the Rehabilitation Act of 1973), and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We have jurisdiction of these claims by virtue of 28 U.S.C. §§ 1331(a) and 1343(a)(3) and (4). At the heart of this action is the allegedly discriminatory firing of the plaintiff teacher by the defendant school board.

Plaintiff Ceinwen King-Smith, age 36, and blind from birth, has accumulated impressive credentials. She was hired as a full time teacher by the Board in March of

1980,[1] and assigned to teach mathematics at Brashear High School. After completing the spring term satisfactorily, she returned to Brashear for the fall term of 1980. King-Smith received an unsatisfactory rating, which she alleges was improper, and was transferred to Latimer Middle School in January of 1981. On April 9, 1981, King-Smith was suspended and on July 23, 1981, she was laid off. This action, in which King-Smith charges that she was fired solely because of her blindness, was filed on September 14, 1981. We presently consider defendants' motion for partial summary judgment on the claims under the Rehabilitation Act of 1973.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, reads in relevant part:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...

The Board's position is that a proper cause of action under Section 504 has not been stated because King-Smith is not the intended beneficiary of any Federal financial assistance received by the Board. The Board further argues that the plaintiff has not alleged, and can not prove, as required in a challenge to employment practices, that the Federal financial assistance has the primary objective of providing employment. This requirement is said to arise from a two step application of the statutes. First, it is provided in the 1978 amendments to the Rehabilitation Act of 1973 that:

> The remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794a(a)(2).

Second, among the "remedies, procedures, and rights" of Title VI is Section 604, which provides:

> Nothing contained in the subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d–3.

Defendants' first argument, that the plaintiff, as an employee, is not the intended beneficiary of any Federal financial assistance to the defendant and therefore may not maintain an action under Section 504, has been repudiated, we believe, by the recent Supreme Court decision in *North Haven Board of Education v. Bell*, —— U.S. ——, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). *North Haven* dealt with Title IX of the Education Amendments of 1972, and whether HEW could lawfully issue regulations covering employment practices thereunder. It thus has no *stare decisis* effect on the case at bar. It is quite instructive, however, because as has often been noted, both Title IX and Section 504 were patterned after Title VI of the Civil Rights Act of 1964. Indeed, except for the description of the class of persons to be protected, the language of the statutes is virtually identical. *Compare* 42 U.S.C. § 2000d *with* 20 U.S.C. § 1681 *and* 29 U.S.C. § 794.

---

1. King-Smith first sought placement on the eligibility list to teach in the Pittsburgh Public Schools in 1968, shortly after being granted certification to teach by the Commonwealth. Although her initial request for permission to take the physical exam required by the Board was refused, she eventually took the exam. The physician recommended waiver of the usual visual requirement in view of King-Smith's qualifications. Nevertheless, the Board refused to place her on the eligibility list. In May of 1970, King-Smith filed an action under the Civil Rights Act, C.A. No. 70–581. A settlement agreement was made in August of 1972, providing that King-Smith would be placed on the eligibility list for selection for employment in due course. She was hired to teach in 1980, after threatening to bring an action to enforce the settlement agreement.

In *North Haven*, the Court determined that while § 901(a) of Title IX does not expressly include employees or exclude them, its broad directive that "no person" may be discriminated against on the basis of sex, on its face, includes employees as well as students. The Court noted by way of example that a female employee who works in a federally funded program and is treated unequally is "subjected to discrimination under" that program. *See* 102 S.Ct. at 1917–19. We believe that, confronted with the identical language in Section 504, the Supreme Court would decide that that Section, on its face, applies to discrimination against employees, as well as other "beneficiaries" of the federally funded programs.

In *North Haven*, the Court undertook an analysis of the legislative history of Title IX to determine whether Congress had demonstrated an intent contrary to the broad reading required by the language of the statute on its face. We have undertaken a similar analysis of the legislative history of the Rehabilitation Act of 1973, as amended in 1978, and of Title VI of the Civil Rights Act of 1964, and conclude, as did the Court reviewing the history of the Title IX, that nothing therein leads to the conclusion that Congress meant to limit the expansive language by excluding employment discrimination from its coverage.

While we find several indications in the legislative history that employment discrimination was intended to be covered by Section 504, see 119 Cong. Rec. 24587 (remarks of Sen. Taft); 119 Cong. Rec. 22588 (remarks of Sen. Williams), the only contrary indication we find arises by implication from the 1978 Amendments to the Act. As noted previously, the "remedies, procedures, and rights" of Title VI were made available to persons aggrieved under Section 504, and one of these "procedures" prohibits agency action as to employment practices except where the primary purpose of the Federal funding is to provide employment.[2] A

number of courts have applied this same limitation to *private* actions under Section 504, even though the statutory language refers only to agencies. *See, Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672 (8th Cir. 1980); *Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir. 1978). We are not persuaded by the reasoning of those courts.

■ The better analysis, we believe, is found in a decision of the Court of Appeals for the Third Circuit. In *N.A.A.C.P. v. Medical Center, Inc.* 599 F.2d 1247 (3d Cir. 1979), the court held that Title VI and Section 504 create private rights of action for plaintiffs who seek relief other than funding termination. Confronted with the argument that sections 602 and 603 of Title VI, which specified administrative procedures as to the enforcement of Section 601, implicitly denied a private cause of action, the court reviewed the history of those sections. Those provisions were enacted, the court determined, because "[t]here was widespread discomfort with the prospect of arbitrary and capricious determinations emanating from Washington, especially if those orders could be backed by the threat of funding termination." 599 F.2d at 1254. "Congress was concerned with limiting the power of federal agencies to bring about compliance with Section 601, not with limiting private rights under Section 601. That Sections 602 and 603 are limits on agencies, and not on rights, is repeatedly made clear in the legislative proceedings." *Id.* Because the plaintiffs in *N.A.A.C.P. v. Medical Center, Inc., supra,* were beneficiaries of the Federal statutes by reason of their being patients at Federally funded hospitals, the court had no occasion to consider Section 604 of Title VI. We are convinced by the foregoing analysis, however, that Section 604 was enacted as a limit on *agency* action and not on private action. Accordingly, we hold that a plaintiff-employee bringing a private action under Section 504 need not allege or prove that the primary

---

**2.** Because resolution of the question is unnecessary to our decision, we assume, without deciding, that by making available the rights, procedures, and remedies of Title VI, Congress also intended to impose the limitations contained in Title VI.

purpose of the Federal funds received by defendant alleged to have discriminated against him was to provide employment.

The foregoing analysis does not end our inquiry. Section 504 provides that no person shall "be subjected to discrimination under any program or activity receiving Federal financial assistance." It is thus clear that the statute is "program specific." It is not enough to show that a person has been discriminated against by a recipient of Federal funds. It must also be shown that he was subject to discrimination under the program or activity for which those funds were received.

In the present case, the Board has submitted affidavits which, they argue, show clearly that King-Smith had no involvement in any of the programs operated with Federal funds—none of the Federal money went toward payment of her salary and none of the programs she taught were supported by Federal funds. Plaintiff has submitted her own affidavit which indicates that she was called upon to do substitute teaching in programs supported with Federal money. More generally, she argues in her brief that "there is little, if any, delineation of federally and non-federally funded aspects within the system." The thrust of this argument is that the Federal financial assistance received by the Board is so substantial, that it pervades the operation of the school system to such a degree, that the entire operation of the school system may be treated as a "program" for purposes of Section 504. This rationale has implicitly been accepted in several cases from other districts within this circuit. *See, Haffer v. Temple University of Com. System,* 524 F.Supp. 531 (E.D.Pa.1981); *Wright v. Columbia University,* 520 F.Supp. 789 (E.D.Pa. 1981); *Poole v. South Plainfield Board of Education,* 490 F.Supp. 948 (D.N.J.1980). Perhaps the Board here has the ability to channel the Federal money it receives to programs where discrimination is not a problem, thereby "freeing" other funds to be used in programs where it could choose to discriminate, circumventing the mandate of Section 504. Alternatively, the Federal funds may be earmarked for specific uses so that the Board has no freedom with regard to allocating these funds. Perhaps personnel employed by the Board are regularly called upon to perform "cross-over" functions, such that although programs might be clearly delineated as being Federally funded, the personnel carrying out those programs are derived at random from the general personnel of the school system. Alternatively, the employees hired by the Board may be assigned to one and only one function. On the present record, we are unable to determine these facts. Even if we were able to determine with certainty the operation of the school system, the affidavits on file would still raise the issue whether this plaintiff was, at any point of her employment, an employee working in a program supported by Federal funds. Consequently, the Section 504 claim may not be decided by summary judgment. The defendants' motion for partial summary judgment will be denied.