**Rollin HAFFER, ind. and on behalf of all others similarly situated, et al.,**

v.

**TEMPLE UNIVERSITY of the Commonwealth System of Higher Education, et al., Appellants.**

**No. 82–1049.**

United States Court of Appeals, Third Circuit.

Argued July 19, 1982.

Decided Sept. 7, 1982.

Nancy Duff Campbell (argued), Marcia D. Greenberger, Margaret A. Kohn, Washington, D. C., for appellees.

Marc P. Cherno, Pamela Jarvis, Fried, Frank, Harris, Shriver & Jacobson, New York City, for amici curiae Disability Rights Educ. and Defense Fund, et al.; Phyllis N. Segal, Anne E. Simon, NOW Legal Defense and Educ. Fund, New York City, of counsel.

Peter M. Mattoon (argued), Michael L. Lehr, Philadelphia, Pa., for appellants; Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM,[*] District Judge.

## OPINION OF THE COURT
### PER CURIAM.

Eight women undergraduates at Temple University brought this class action, charging that the University discriminates on the basis of sex in its intercollegiate athletic program.[1] The plaintiffs contend that Temple's allegedly discriminatory policies violate section 901(a) of Title IX of the Education Amendments of 1972, which provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[2] 20 U.S.C. § 1681(a).[3] Temple denied that it discriminates against women in intercollegiate athletics and moved for summary judgment, arguing that Title IX applies only to an education program or an activity *directly* in receipt of federal funds and that the University's athletic program receives no such earmarked federal monies.[4]

After several affidavits had been submitted and a number of depositions had been taken in order to clarify the nature of federal funding currently received by Temple,[5] Chief Judge Lord denied the motion

---

[*] Hon. Hubert J. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation.

[1] The plaintiffs maintain that: Temple is not in compliance with Department of Education regulations requiring schools to spend on male and female athletes a proportion of funds equivalent to the proportion of males and females engaged in intercollegiate athletics (women comprised 42% of all intercollegiate athletes at Temple, yet received only 13% of the total dollars spent on intercollegiate athletics); several times as much money per capita is allocated for men's as opposed to women's athletic scholarships; Temple does not provide women with the selection of sports and levels of competition available to men; Temple provides women with inadequate equipment, supplies, facilities, uniforms, coaching, per diem allowances, academic tutoring, etc., compared to what it provides its male athletes.

[2] Plaintiffs were supported by various *amici curiae* who filed a motion to file a brief that was accompanied by a brief. The motion to file a brief has been granted.

[3] Private actions to enforce Title IX were recognized by the Supreme Court in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

[4] The parties do not contest the fact that Temple's athletic department receives no federal grants specifically earmarked for the intercollegiate athletic program. *See Haffer v. Temple Univ.*, 524 F.Supp. 531, 532 (E.D.Pa.1981).

[5] According to the district court, approximately 10% of Temple's total annual operating budget is supplied by the federal government, primarily in the forms of grants, contracts, long terms loans, and interest subsidies for construction and renovation of university buildings. *See*

for summary judgment. The district court held that: (1) Title IX's coverage is not limited to educational programs and activities that receive *earmarked* federal dollars, but also includes any program that *indirectly* benefits from the receipt of federal funds; because Temple's athletic program indirectly benefits from the large amounts of federal financial assistance furnished to the University in the forms of grants and contracts, Title IX is applicable to Temple's athletic program; and (2) even if Title IX is construed to require direct federal financing, the Temple athletic program receives and benefits from several hundred thousand dollars worth of annual federal aid, and therefore is covered under Title IX. *Haffer v. Temple University*, 524 F.Supp. 531 (E.D. Pa.1981).

■ Temple requested and received certification pursuant to 28 U.S.C. § 1292(b) of the following question:

Whether the phrase "education program or activity receiving Federal financial assistance" as used in Section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681(a)) includes programs or activities, such as Temple University's intercollegiate athletic program, which do not themselves receive earmarked Federal financial assistance, if such programs or activities benefit from the receipt of Federal financial assistance by other parts of the University and/or by students enrolled at the University.

We answer this question in the affirmative.

After this matter was heard at oral argument, another panel of this Court issued a decision in *Grove City College v. Bell,* 687 F.2d 684 (3d Cir. 1982). The issue in *Grove City* was whether a private college that receives no direct funds from the federal government, but whose students receive federal grants under the Basic Educational Opportunity Grants program (BEOG), is covered under Title IX. After analyzing the statute, its legislative history, and the relevant caselaw, the *Grove City* panel concluded that Title IX's prohibition on gender discrimination in education is indeed triggered when students make use of BEOG assistance.

Whatever the views of the individual judges on this panel may be, the result reached in *Grove City* and the reasoning employed by the Court there resolve the present appeal.[6] The *Grove City* panel initially determined that the "all inclusive terminology" of Title IX "encompass[es] *all* forms of federal aid to education, direct or indirect." At 691. The Court's holding in *Grove City* that the receipt of BEOG monies by students is sufficient to subject a college to Title IX coverage, *see at* ——, is binding in the present controversy, for the record establishes that many Temple students—and many Temple athletes—participate in the BEOG program.

■ Further, *Grove City* rejected the assertion that the program-specific nature of Title IX, *see North Haven Board of Education v. Bell,* —— U.S. ——, ——, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982), somehow limits the authority of the Department of Education to regulate only in those situations in which direct federal monies to a specific program can be pinpointed. According to *Grove City,* "the legislators [who enacted Title IX] did not contemplate that separate, discrete, and distinct components or functions of an integrated educational institution would be regarded as the individual program, to which section [ ] 901 . . . refer[s]." At 697. In arriving at this conclusion, the *Grove City* majority explicitly relied upon the reasoning employed by

---

*Haffer v. Temple Univ.,* 524 F.Supp. 531, 532 (E.D.Pa.1981). Moreover, Temple students rely on millions of dollars in federal grants and loans to pay tuition and other costs. Additionally, the affidavits and depositions indicate that the University's athletic department is the beneficiary of somewhat more direct federal assistance: Work-Study money pays the salaries of a sizeable number of employees in the athletic

department; many athletes receive federal grants and loans; and the intercollegiate athletic program makes use of a number of federally financed buildings. *Id.* at 540–41.

6. Opinions of one panel of this Court are binding on subsequent panels. *See* 3d Cir. Internal Operating Procedures, Rule VIII(C).

the district court in *Haffer*, the decision appealed from here. *See* at 700.[7] "Where the federal government furnishes indirect or non-earmarked aid to an institution," the *Grove City* Court declared, "it is apparent to us that the institution itself must be the 'program'" referred to in Title IX. At 700. After *Grove City*, then, it is clear that the only result we can reach in this appeal is to affirm: if Temple University as a whole is to be considered the "program or activity" for Title IX purposes, it follows that because the University as a whole receives federal monies, its intercollegiate athletic department is governed by Title IX.[8] In sum, the theory announced by the district court in this dispute—that the Temple athletic department "receives" federal financial assistance because federal money sent to the University itself frees nonfederal funds which can be allocated to intercollegiate athletics—is consonant with the subsequent decision of this Court in *Grove City*.

The judgment of the district court will be affirmed and the matter returned to that court for further proceedings.[9]

---

7. The majority in *Grove City* also specifically rejected the reasoning and holding of three district court decisions that arrived at a result contrary to that reached by the district court in this case: *University of Richmond v. Bell*, 543 F.Supp. 321 (E.D.Va.1982); *Bennett v. West Texas St. Univ.*, 525 F.Supp. 77 (N.D.Tex.1981); and *Othen v. Ann Arbor School Bd.*, 507 F.Supp. 1376 (E.D.Mich.1981). *Grove City* also declined to follow a court of appeals decision relied upon by Temple here. *Rice v. President & Fellows of Harvard College*, 663 F.2d 336 (1st Cir. 1981). *See Grove City*, at 700 n.27.

8. The *Grove City* Court declined to decide the scope of Title IX's coverage in situations where a university established a "financial Chinese

wall" around a particular program or where only one particular program received direct federal aid. *See Grove City*, at —— n.28. Neither of these two hypothetical situations, however, is presented by the facts in this appeal.

9. In view of our disposition of this appeal, we express no opinion with respect to the district court's alternative reason for holding that Title IX covers Temple's intercollegiate athletic program: because "[a]t least some of the federal funding going to Temple University is *closely connected* to the intercollegiate athletic program." *Haffer v. Temple Univ.*, 524 F.Supp. 531, 540 (E.D.Pa.1981) (emphasis added). *See* note 4 *supra*.