Myra Anne **BACHMAN**, Plaintiff,

v.

**AMERICAN SOCIETY OF CLINICAL PATHOLOGISTS**, Defendant.

Civ. A. No. 82–4394.

United States District Court,
D. New Jersey.

Dec. 5, 1983.

---

A. Lawrence Washburn, Jr., Williston Park, N.Y., Evans, Koelzer, Osborne, Kreizman & Bassler by John P. Croake, Red Bank, N.J., for plaintiff.

Shanley & Fisher by Frank L. Bate, Newark, N.J., McKenna, Conner & Cuneo by Jeffrey P. Altman, Washington, D.C., for defendant.

## OPINION

DEBEVOISE, District Judge.

### I. PRELIMINARY STATEMENT

Plaintiff, Myra Anne Bachman, instituted this suit against defendant, the American Society of Clinical Pathologists (hereinafter "ASCP") on October 29, 1982, alleging that ASCP's denial of plaintiff's request for special testing conditions during an examination conducted by its Board of Registry constituted discrimination against a handicapped person in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Presently before the court is ASCP's motion to dismiss the complaint or for summary judgment.

## II. FACTUAL AND PROCEDURAL HISTORY

ASCP is a non-profit professional medical specialty society organized under the laws of Illinois with its principal place of business in Chicago. The society's membership includes pathologists, clinical scientists, and medical laboratory personnel. Among the various standing committees of ASCP is the Board of Registry, which is composed of twenty volunteers nominated for three year terms. The function of the Board of Registry, as set forth in ASCP's By-laws, is to "develop standards and procedures for individuals to enter, continue and/or advance in the medical laboratory, and to certify and register those individuals who meet the required level of competence." To fulfill this mandate, the Board of Registry periodically gives an examination to those persons who have completed the educational requirements established by the Board. Upon successfully passing the examination, an applicant is issued a certificate by the Board of Registry, which certificate is renewable annually.

On February 25, 1977, plaintiff applied to take the August 1977 Board of Registry examination for certification as a medical technologist. Plaintiff satisfied the educational and internship requirements for taking the examination. On March 29, 1977, however, she requested a reader and extra time for the examination due to her dyslexia, a condition which caused her difficulty in reading.

The Board of Registry denied plaintiff's request in June 1977. This decision was communicated to plaintiff by letter dated June 6, 1977. Subsequently, plaintiff informed the Board that she would not take the August 1977 examination. Upon further reconsideration of plaintiff's request for special assistance during the examination, the Board in October 1977 affirmed its original decision to deny her request.

Plaintiff filed a discrimination complaint against ASCP with the Department of Health, Education and Welfare (hereinafter "HEW") on January 20, 1978. By letter dated December 31, 1979, HEW's office for Civil Rights informed ASCP that plaintiff's complaint was dismissed since ASCP was receiving no federal funds at that time. Consequently, the Office for Civil Rights stated that it had no jurisdiction to enforce section 504 of the Rehabilitation Act of 1973 against ASCP.

The only federal assistance received by ASCP since March 1977, when the plaintiff applied to take the August 1977 Board of Registry examination, was two grants awarded by HEW. The first grant was awarded on January 7, 1977 in the amount of $40,920 to finance three seminars on alcohol abuse and alcoholism. These seminars were conducted on March 6, 1977, October 23, 1977 and March 19, 1978 at national meetings for pathologists. The second grant was awarded on June 26, 1978 in the amount of $12,420 to publish the proceedings of the seminars presented under the first grant. No further federal financial assistance has been received by ASCP in any form since 1978.

Plaintiff commenced this suit against ASCP on December 28, 1982. The court's jurisdiction over the statutory claims raised by plaintiff is conferred by 28 U.S.C. § 1331.

ASCP now moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or for summary judgment pursuant to Fed.R.Civ.P. 56 on grounds that section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, is not applicable to organizations which are receiving no federal funds. Upon consideration of the affidavits and briefs of the parties and for the reasons discussed below, I find that ASCP is not subject to the Rehabilitation Act of 1973 and is, therefore, entitled to summary judgment pursuant to Fed.R.Civ.P. 56.

## III. CONCLUSIONS OF LAW

In considering ASCP's motion to dismiss or for summary judgment, plaintiff's complaint must be viewed in the light most favorable to plaintiff and the allegations contained therein must be taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct.

1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The following facts are alleged in the complaint: (1) plaintiff is a functionally proficient professional fully qualified as a medical technician despite her dyslexia, which impairs her recognition of the written or printed word; (2) plaintiff applied to take the August 1977 national certification examination offered by ASCP's Board of Registry but ASCP refused to make accommodations in its testing format for plaintiff's dyslexia; (3) at the time of said refusal, ASCP was receiving federal funds; (4) plaintiff's administrative complaint filed in 1977 with the HEW Office of Civil Rights was dismissed on grounds that ASCP was no longer receiving federal funds. Plaintiff seeks injunctive relief and compensatory damages in the amount of $50,000.00.

Plaintiff contends that ASCP's refusal to modify its testing conditions to accommodate her handicap constitutes a violation of section 504 of the Rehabilitation Act of 1973. This section prohibits a recipient of federal financial assistance from denying benefits to an otherwise qualified handicapped person solely on the basis of the handicap.[1] The threshold inquiry in applying section 504 is whether ASCP is a recipient of federal funds.

HEW has defined "federal financial assistance" to mean any grant, loan, contract, or any other arrangement by which the Department provides or makes available assistance in the form of funds. 45 C.F.R. § 84.3(h). The Department's regulations further define a "recipient" of federal financial assistance, stating:

(f) "Recipient" means any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.

45 C.F.R. § 84.3(f).

Although ASCP is presently not receiving federal financial assistance, it concedes that in 1977 and 1978, during the period when plaintiff applied to take the Board of Registry's national certification examination, it obtained two grants from HEW. (Dietrich Aff., ¶ 17). ASCP contends that these past grants do not render it subject to section 504 since this section applies only to *current* recipients of federal funds. Alternatively, ASCP argues that the anti-discrimination provisions of section 504 apply only to the specific program receiving federal funds. Accordingly, since the federal financial assistance ASCP received in 1977 and 1978 did not in any way relate to the examination and certification functions of the Board of Registry, ASCP asserts that it is not subject to section 504. Each of these grounds will be addressed separately below.

## A. APPLICATION OF SECTION 504 IS NOT LIMITED TO CURRENT RECIPIENTS OF FEDERAL FINANCIAL ASSISTANCE.

ASCP's construction of section 504 as having applicability limited to current recipients of federal funds is incorrect. The purpose of this section is to eliminate discrimination on the basis of handicap in any program or activity receiving federal financial assistance. 45 C.F.R. § 84.1. The present tense language of the statute and implementing regulations reflects the fact that the federal funding is conditioned on the recipient's simultaneous compliance with the anti-discrimination provisions of section 504. *Cf. Hupart v. Board of Higher Ed. of City of New York*, 420 F.Supp. 1087, 1104 (S.D.N.Y.1976) (since biomedical

---

1. Section 504 is reproduced in pertinent part below:

   No otherwise qualified handicapped individual in the United States, ..., shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

   29 U.S.C. § 794.

program of defendant did not receive federal funds until after alleged reverse discrimination had occurred, jurisdiction of the court could not be founded on 42 U.S.C. § 2000d which prohibits discrimination on grounds of race by recipient of federal funds). Thus, the regulations promulgated by the Department of Health and Human Services pursuant to section 504 state that the recipient is obligated to comply with this section "for the period during which federal financial assistance is extended." 45 C.F.R. § 84.6(b)(3). Failure to comply with this condition for receipt of federal funds constitutes a statutory violation which is not cured merely upon discontinuance of the federal assistance.

In support of its contention that the Rehabilitation act only applies to current recipients of federal funds, ASCP argues that the remedies available to plaintiffs under section 504 are limited to an injunction requiring the recipient to end its discriminatory practices or have its federal financial assistance terminated. Consequently, if the statute is construed to apply to recipients not presently receiving federal funds but who discriminated against handicapped persons in the past while receiving federal funds, the statute provides a cause of action without a remedy since the recipients no longer receive federal funds which could be enjoined. Assuming ASCP's construction of the statute to be true, the threat of a permanent injunction against receiving any future federal funds may be viewed as a stringent measure by many recipients. Examination of the statute, and the relevant case law, however, does not support ASCP's contention that the remedies available to plaintiffs under section 504 are limited to a termination of federal funds. Rather, as the following discussion

makes clear, such plaintiffs may seek monetary relief as well as injunctive relief from a recipient's violation of section 504.

The administrative remedies available for violations of section 504 are set forth in section 505(a)(2) of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, amending the Rehabilitation Act of 1973. Section 505(a)(2) provides:

> The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance under section 794 [504] of this title.

29 U.S.C. § 794a(a)(2). As the text of section 505(a)(2) indicates, this section extends the remedies, procedures and rights of Title VI to victims of handicap discrimination under section 504. Under Title VI, the Department of Health and Human Services is authorized to review complaints of discrimination based on race, color or national origin.[2] The sole administrative remedy is termination of federal funds to an offending recipient. 42 U.S.C. § 2000d–1. There is no provision for the reviewing agency to award damages to persons who have been injured by violations of section 504. The constraints imposed by Title VI on the remedies available to administrative agencies are not binding on a federal court reviewing a claim brought by a private litigant pursuant to section 504. The Third Circuit has consistently recognized this fact in reviewing claims under Title VI. For example, in *N.A.A.C.P. v. Medical Center, Inc.*, 599 F.2d 1247, 1254 (3d Cir.1979), the Court held that Title VI and section 504 of the Rehabilitation Act created private rights of

2. Title VI consists of six parts: section 601, 42 U.S.C. § 2000d declares that no person shall be discriminated against on the basis of race, color, or national origin by recipients of federal assistance; section 602, *id.*, § 2000d–1, directs federal departments and agencies to issue rules or regulations effectuating the prohibition against discrimination and to terminate federal funding upon failure of the recipient to comply with such rules; section 603, *id.*, § 2000d–2, provides

for judicial review of agency action; section 604, *id.*, § 2000d–3, authorizes any department or agency to terminate federal funding for employment discrimination only "where a primary objective of the Federal financial assistance is to provide employment;" section 605, *id.*, § 2000d–4, exempts from the scope of Title VI programs receiving federal funds by way of a contract of insurance or guaranty.

action for plaintiffs seeking relief other than termination of federal funding, explaining:

> Congress was concerned with limiting the power of federal agencies to bring about compliance with section 601 [of Title VI], not with limiting private rights under section 601. That sections 602 and 603 are limits on agencies, and not on rights, is repeatedly made clear in the legislative proceeding.

Similarly, in *Le Strange v. Consolidated Rail Corporation*, 687 F.2d 767, 778 (3d Cir.1982) (Weis, J. concurring), *cert. granted*, —— U.S. ——, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983), the Court noted that, "the Rehabilitation Act's reference to Title VI was not intended to restrict the remedies of handicapped individuals but rather to limit the sanctions which government agencies could take against an offending recipient of federal financial assistance." In cases such as the one at bar, where the allegedly offending recipient no longer receives federal funds, the administrative remedy is totally inadequate for vindicating the rights of the individual complainant. *Chowdhury v. Reading Hospital & Medical Center*, 677 F.2d 317, 322, n. 13 (3d Cir.1982); *Patton v. Dumpston*, 498 F.Supp. 933, 940 (S.D.N.Y.1980). Thus, in suits to enforce Title VI and the Rehabilitation Act, private plaintiffs who have been subjected to discrimination by federal grantees are not limited to equitable relief but may also seek monetary damages. Indeed, where, as here, the defendant has discontinued receipt of federal funding, monetary damages may be the only means of compensating a victim of past discrimination. Furthermore, affirmative injunctive relief, rather than termination of federal funding may better protect a plaintiff's rights.

The Third Circuit has not expressly determined that compensatory damages are available in private actions under section 504. *See Le Strange v. Consolidated Rail Corporation*, *supra*, 687 F.2d at 771, n. 2; *N.A.A.C.P. v. Medical Center, Inc.*, *supra*, 599 F.2d at 1248, n. 1. Several district courts within this circuit, however, have allowed private damage actions to proceed under section 504. *Hutchings v. Erie City and County, etc.*, 516 F.Supp. 1265 (W.D. Pa.1980); *Poole v. South Plainfield Bd. of Ed.*, 490 F.Supp. 948 (D.N.J.1980); *Stubbs v. Kline*, 463 F.Supp. 110 (W.D.Pa.1978); *Drennon v. Phila. General Hosp.*, 428 F.Supp. 809 (E.D.Pa.1977). The rationale of these courts has been that the availability of monetary damages is necessary to ensure that violations of the federal civil rights statutes are completely redressed. To this end, the courts have permitted plaintiffs suing under section 504 the full panoply of remedies, including equitable relief and monetary damages. *See also Guardinas Ass'n of New York City v. Civil Services*, 633 F.2d 232, 274 (2d Cir. 1980) (Coffrin, J., concurring) (private right of action under Title VI exists irrespective of whether compensatory damages are sought). I find the reasoning of these cases to be sound, and that handicapped persons such as plaintiff, who are subjected to discrimination by federal grantees, may seek affirmative injunctive and compensatory relief under section 504, even though the federal financial assistance has terminated. Therefore, plaintiff in the instant case does not have a remediless right of action in her suit against a past recipient of federal funds. Past recipients of federal financial assistance, such as ASCP, are liable for violations of the Rehabilitation Act which occurred during the time that they were recipients.

## B. PROGRAM–SPECIFIC REQUIREMENTS OF SECTION 504 RELIEVE ASCP OF LIABILITY.

█ ASCP is a "recipient of federal financial assistance" within the meaning of section 504 because it received federal funds in 1977 and 1978 when the events in question took place. It is not enough, however, to show that a person has been discriminated against by a recipient of federal funds. Plaintiff must also show that she was subject to discrimination under the program or activity for which those funds were received. *Pittsburgh Fed. of Teach-*

ers, *Local 400 v. Langer*, 546 F.Supp. 434, 437 (W.D.Pa.1982). Defendant asserts that it is still entitled to summary judgment since the program which allegedly discriminated against plaintiff was not in any way related to the program receiving federal funds. I agree.

Section 504 of the Rehabilitation Act imposes a program-specific requirement limiting claims brought pursuant to this section to those programs or activities which are federally funded. Interpreting almost identical language in Title IX, the Supreme Court in *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 534–540, 102 S.Ct. 1912, 1925–1928, 72 L.Ed.2d 299 (1982), stressed that the coverage of the legislation in question extended only to the particular activity, or program receiving federal financial assistance. Thus, the withdrawal of federal funding or other remedies granted must be appropriately limited to the offending program. This requirement ensures that innocent programs will not be penalized for violations of anti-discrimination statutes perpetuated in other programs of the same organization.

The Third Circuit has not defined "program or activity" within the meaning of section 504, or similar statutes, when, as here, a direct federal grant is involved. Where indirect federal funding is at issue the Third Circuit has avoided a compartmentalized analysis of "programs". In circumstances where an entire organization benefits from the funds and can apply the funds where it deems appropriate, the Third Circuit has held that the organization itself constitutes a "program". *Grove City College v. Bell*, 687 F.2d 684, 700 (3d Cir. 1982), *cert. granted*, —— U.S. ——, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983) (College receiving indirect federal assistance in form of student loans and grants was itself a "program" subject to Title IX). *Accord Haffer v. Temple University*, 688 F.2d 14 (3d Cir.1982) (where University as whole received federal funds and was "program", its intercollegiate athletic department was subject to Title IX, notwithstanding fact that department did not directly receive federal monies). The rationale of these decisions is not applicable to the instant case since the federal grants were directly awarded for and applied to specific activities of ASCP and were not used generally to support the organization.

■ The affidavits submitted by ASCP indicate that the federal grants this organization received in 1977 and 1978 were specifically earmarked for the presentation of seminars on alcohol abuse and the publication of the seminars. These funds were not generally granted for use anywhere within the organization at its discretion. Rather the amounts awarded were expended on the endeavors for which the grants had been made with no cross-over of funds to the Board of Registry, which conducted the allegedly discriminatory certification examination. Indeed, ASCP has never received any federal funds relating to the examination and certification functions of the Board of Registry. Moreover, the total amount of the grant awards, $53,340, does not appear to have been sufficient in an organization supporting a full-time professional staff of thirty-five persons to provide indirect support for organizational activities other than the ones specified in the grants. As the court in *Brown v. Sibley*, 650 F.2d 760, 767 (5th Cir.1981) noted, "the receipt of federal financial assistance by a multiperson entity, for specific application to certain programs or activities, does not, without more, bring all of those multiple programs or activities within the reach of section 504."

■ Plaintiff attempts to avoid the consequences of the program-specific requirement of section 504 and bring ASCP within the coverage of this Act by asserting that the tax exempt status enjoyed by defendant constitutes indirect financial assistance which benefits the entire organization. Although tax exempt status confers a substantial economic advantage on ASCP, not every item of economic value granted by the federal government counts as financial assistance within the meaning of section 504 of the Rehabilitation Act. For example, in *Community Television of*

**1264**

*So. Cal. v. Gottfried,* —— U.S. ——, ——, 103 S.Ct. 885, 890, 74 L.Ed.2d 705, 714 (1983), the Supreme Court, while acknowledging that broadcast licenses possess economic value, held that Congress did not intend the FCC's renewal of a broadcast license to be considered a form of "financial assistance" within the meaning of section 504 and, therefore, the Rehabilitation Act was not applicable to commercial television stations. Thus, the question of whether "federal financial assistance" includes tax exemptions under the Internal Revenue Code becomes one of Congressional intent. I conclude that the Rehabilitation Act was not intended to cover tax-exempt institutions absent any further affirmative federal financial assistance.

■ Support for this conclusion is suggested first by the plain meaning of section 504. The term "assistance" connotes a transfer of government funds by way of subsidy, not merely an exemption from taxation. *Cook v. Budget Rent-A-Car Corp.,* 502 F.Supp. 494, 496 (S.D.N.Y.1980) ("federal financial assistance" does not include procurement contracts for goods or services sold or purchases by the government for its own account at fair market value); *Rogers v. Frito-Lay, Inc.,* 433 F.Supp. 200, 204 (N.D.Tex.1977), *aff'd on other grounds,* 611 F.2d 1074 (5th Cir. 1980), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980) (ruling on basis of plain meaning of term that "federal financial assistance" under section 504 "does not comprehend government contracts but rather refers to the form of grant assistance that goes primarily to public entities").

■ Secondly, the administrative definition of the term does not include tax exempt status within the meaning of "federal financial assistance." Rather, this term is defined by HEW as follows:

(h) "Federal financial assistance" means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Depart-

ment provides or otherwise makes available assistance in the form of:

(1) Funds;

(2) Services of Federal personnel; or

(3) Real and personal property or any interest in or use of such property, including:

(i) Transfers or leases of such property for less than fair market value or for reduced consideration; and

(ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

45 C.F.R. § 84.3(h). This definition confirms that the Act anticipates some transfer of funds from the federal Treasury or the transfer of something of value to the recipient of the assistance. Furthermore, the term "recipient" is defined to refer to "any public or private agency, institution, organization or other entity ... to which Federal financial assistance is extended." 45 C.F.R. § 84.3(f). In parallel regulations issued by the Department of Justice to implement the Rehabilitation Act, the Department explained that "the term Recipient includes ... nonprofit institutions ... under grants ... of [Law Enforcement Assistance Administration] funds." 45 Fed. Reg. 37,620, 37,632 (June 31, 1980). By implication, then, mere non-profit status does not suffice to qualify an organization as a recipient of federal funds. Rather, such an organization must be the recipient of federal grants, contracts, or loans, or be party to a cooperative agreement with the government. Given the sparse legislative history available concerning the Rehabilitation Act, considerable deference should be given to these administrative interpretations in ascertaining the meaning of "federal financial assistance". [1973] *U.S. Code Cong. & Ad.News,* p. 2076; [1974] *U.S. Code Cong. & Ad.News,* p. 6373; [1978] *U.S. Code Cong. & Ad.News,* p. 7312.

Finally, the analysis of similar statutes by other courts supports the conclusion that the tax exempt status of an organization is not a form of federal financial assistance cognizable under section 504. For

example, in extending the coverage of Title IX to an entire educational institution, the courts have relied on the indirect benefits such institutions receive from federal grants and student loans and not on the tax exempt status of the schools themselves. *See, e.g., Grove City, supra; Haffer, supra.* For these reasons, I find that the tax exempt status of ASCP is not "federal financial assistance" rendering the organization as a whole subject to the requirements of section 504. In the absence of any nexus between the direct federal grants received by ASCP and the allegedly discriminatory acts complained of by plaintiff, the program-specific requirement of the Act removes the activities of the Board of Registry from the coverage of section 504.

## IV.  CONCLUSION

ASCP's motion for summary judgment is granted.