Ann H. EASTMAN, Plaintiff–Appellant,

v.

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; the Board of Visitors of Virginia Polytechnic Institute and State University; William E. Lavery, Chancellor; Paul M. Gherman, Director of Libraries, Defendants–Appellees.

No. 90–1453.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1991.

Decided July 12, 1991.

As Amended Aug. 6, 1991.

---

**17.** *Id.*

John Adrian Gibney, Jr., Shuford, Rubin, Gibney & Dunn, Richmond, Va., argued (Jane Chittom, Shuford, Rubin, Gibney & Dunn, Richmond, Va., on the brief), for plaintiff-appellant.

Richard Croswell Kast, Asst. Atty. Gen., Richmond, Va., argued (Jerry D. Cain, Sp. Asst. Atty. Gen. and Gen. Counsel, Virginia Polytechnic Institute and State University, Blacksburg, Va., on the brief), for defendants-appellees.

Before HALL and NIEMEYER, Circuit Judges, and KISER, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Ann H. Eastman appeals the order dismissing as time-barred her action for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. 732 F.Supp. 665. We affirm, but for different reasons than those relied on by the district court.

### I.

Eastman was employed by Virginia Polytechnic Institute and State University ("VPI") from 1978 through January 1, 1989. In June, 1986, she was transferred from her job in the office of the Dean of the College of Arts and Sciences to one in the VPI library. She suffers from a variety of handicaps that make even simple movements difficult, and she claims that VPI officials assured her that she would receive assistance in moving to her new office. She alleges that she in fact received very little assistance and experienced "great pain and suffering" as a result. Eastman also alleges that VPI officials promised, but did not provide, various accommodations to her handicaps during the remainder of her employment, and that this lack of assistance also caused her to suffer and led to a deterioration of her physical condition. She retired on a disability pension effective January 1, 1989.

On April 20, 1988, Eastman filed a complaint claiming violations of § 504 of the Rehabilitation Act. She sought a declaration that her rights had been violated, compensatory damages of $200,000, punitive damages of $100,000, and costs and attorney's fees. Named as defendants were VPI, its governing body, the university chancellor, and the director of libraries.

By order entered March 8, 1990, the district court ruled that Eastman's cause of action accrued no later than the fall of 1986. Borrowing Virginia's one-year statute of limitations from that state's Rights of Persons with Disabilities Act, Va.Code § 51.5–46 (1988), the court ruled that Eastman's § 504 claim was time-barred. Accordingly, summary judgment was granted to the defendants. Eastman appeals.[1]

### II.

Defendants contend that the Rehabilitation Act does not permit an award of compensatory damages for pain and suffering. They argue that, because Eastman makes no claim for back pay or injunctive relief, the dismissal of the § 504 claim may be affirmed unless the monetary remedy she seeks is available to her. *See Davis v. Passman,* 442 U.S. 228, 244, 99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979) (despite the existence of a cause of action, a complaint may be dismissed under Fed.R.Civ.P. 12(b)(6) if no judicial relief is available). This defense was raised below but not ruled on by the district court. This issue offers a single, comprehensive basis for our decision, and we affirm because Eastman's claim fails to state a claim upon which relief can be granted. *See Dandridge v. Williams,* 397 U.S. 471, 475 n. 6,

---

**1.** The district court's Memorandum Opinion makes no mention of a state-law contract claim included in Eastman's complaint. Because Eastman has failed to raise any issue on appeal relating to this claim, we will treat it as having been waived. *See Shopco Distributing v. Commanding General,* 885 F.2d 167, 170 n. 3 (4th Cir.1989) (under Fed.R.App.P. 28(a)(4), failure to raise a claim on appeal amounts to a waiver of such claim).

90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970) ("The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court."); *see also Charbonnages de France v. Smith,* 597 F.2d 406, 416 (4th Cir.1979).

### A.

Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794(a) (1991 Supp.), provides:

> No otherwise qualified individual with handicaps ... shall, solely by reason of his or her handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. ...

■ Defendants argue that, even if Eastman has properly alleged a violation of § 504, her retirement in 1989 extinguished any remaining viable claims for relief. A claim for back pay was not made, inasmuch as the discrimination charged by Eastman did not deprive her of employment opportunities. Similarly, her retirement obviates the need for declaratory relief.[2] We need only consider whether compensatory damages for "pain and suffering" may be awarded under § 504.

Section 505(a)(2) of the Rehabilitation Act provides that "the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964" are available to persons aggrieved by violations of § 504. 29 U.S.C. § 794a(a)(2) (1982). Title VI prohibits discrimination on the ground of race, color or national origin in federally assisted programs. 42 U.S.C. § 2000d (1981). The specific extent and nature of recoverable damages under these statutes, however, have not yet been definitively decided by the Supreme Court or by this Court; other circuit and district courts, moreover, are divided on the question.[3]

We begin with what clearly is recoverable in a § 504 or a Title VI action. Section 504, at least in a case of intentional discrimination, "authorizes ... an equitable action for back pay." *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630, 104 S.Ct. 1248, 1252, 79 L.Ed.2d 568 (1984) (§ 504). Likewise, injunctive and declaratory relief (including reinstatement) aimed at rectifying a discriminatory practice may be ordered. *See, e.g., Drayden v. Needville Indep. School Dist.,* 642 F.2d 129, 132–33 (5th Cir.1981). The Rehabilitation Act provides explicit authority for an award of attorney's fees. 29 U.S.C. § 794a(b). The gray area is "compensatory damages" as that term is understood to encompass damages for physical and mental suffering.

Our analysis of the extent of "the remedies ... set forth in Title VI" requires an exploration of the murky waters of Congressional intent. The Supreme Court made some halting steps in this regard in *Guardian's Assoc. v. Civil Service Comm. of City of N.Y.,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). For our purposes, *Guardian's* provides a starting point to the extent that a majority of the Court agreed, albeit by varying rationales, that *intentional* discrimination is a prerequisite to an award of any sort of "compensatory damages" to a private litigant in a

---

2. Eastman prayed for "[a] declaratory judgment that the defendants have violated her rights." Since it is highly unlikely that Eastman will return to work at VPI, her retirement renders the claim moot. *See Bryant v. Cheney,* 924 F.2d 525, 528–29 (4th Cir.1991) (expungement of poor employee performance rating mooted declaratory judgment claim because plaintiff was unable to show any indication that such treatment would recur); *see also Winsett v. McGinnes,* 617 F.2d 996, 1004 (3rd Cir.1980) (claim for declaratory relief may survive dismissal on mootness grounds if claim is a predicate to damages).

3. Contrast the following observations from two Supreme Court opinions decided a year apart: *Guardian's Assoc. v. Civil Service Comm. of City of N.Y.,* 463 U.S. 582, 602 n. 23, 103 S.Ct. 3221, 3232 n. 23, 77 L.Ed.2d 866 (1983) ("The lower courts are generally in agreement that it is not appropriate to award monetary damages for Title VI violations.") (citations omitted), with *Smith v. Robinson,* 468 U.S. 992, 1020 n. 24, 104 S.Ct. 3457, 3472 n. 24, 82 L.Ed.2d 746 (1984) ("[W]e note that courts generally agree that damages are available under § 504....") (citations omitted).

Title VI case. *See id.*, at 607 n. 27, 103 S.Ct. at 3235 n. 27. The term "compensatory damages," however, was used in a limited sense to describe only retrospective equitable relief of the type available under Title VII (42 U.S.C. § 2000e *et seq.*). "Compensatory" relief in *Guardian's* encompassed only equitable monetary relief, *i.e.* back pay, and injunctive relief, and the Justices used the term in discussing the distinction between retrospective and prospective relief. See *Guardian's*, 463 U.S. at 600–607, 103 S.Ct. at 3231–35 (White, J., announcing judgment of the Court); 463 U.S. at 624–633, 103 S.Ct. at 3244–49 (Marshall, J., dissenting); 463 U.S. at 636–638, 103 S.Ct. at 3250–51 (Stevens, J., dissenting). *Guardian's*, then, should be read to authorize the recovery of only equitable back pay damages.

We will assume that Eastman's allegations of broken promises and repeated failures to accommodate her suffice to set forth a claim of intentional discrimination. We proceed, then, to first review how the courts have addressed the parameters of allowable "compensatory damages" recoverable in an action to redress violations of § 504 or Title VI.

#### B.

The leading case espousing the view that § 504 does permit recovery of a broad range of "compensatory damages" is *Miener v. State of Missouri*, 673 F.2d 969 (8th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Proceeding from the general propositions that "[t]he existence of a statutory right implies the existence of all necessary and appropriate remedies" and that "the right to seek money damages for civil rights violations is an accepted feature of the American judicial system," *id.* at 977 [citations omitted], the Eighth Circuit reasoned that the vindication of the injured individual's rights may often only be accomplished by a money award. The nature and extent of such damages, however, were not clearly explained, and there was little more than a nodding reference to legislative intent.[4] The general rule that "a federal court may use any available remedy to afford full relief ... yields where necessary to carry out the intent of Congress...." *Guardian's*, 463 U.S. at 595, 103 S.Ct. at 3229.

Some courts have read *Miener* to sanction the entire panoply of tort-style money awards in § 504 cases. *See Kling v. County of Los Angeles*, 769 F.2d 532, 534 (9th Cir.), *rev'd on other grounds*, 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985); *Hurry v. Jones*, 560 F.Supp. 500, 511 (D.R.I. 1983) (compensatory damages for pain and suffering caused by § 504 violations allowed); *aff'd in part, rev'd in part on other grounds*, 734 F.2d 879 (1st Cir.1984); *see also Bachman v. American Soc. of Clinical Pathologists*, 577 F.Supp. 1257, 1262 (D.N.J.1983); *Patton v. Dumpson*, 498 F.Supp. 933, 937–39 (S.D.N.Y.1980); *Glanz v. Vernick*, 750 F.Supp. 39, 42 (D.Mass.1990) (assuming, without deciding, that compensatory damages for pain, suffering and emotional distress were available in a § 504 action). District courts in the Eighth Circuit, however, have not given *Miener* such an expansive interpretation.

---

**4.** The "support for the damage remedy" gleaned from the legislative history by the *Miener* court is of dubious persuasive force. *See Miener*, 673 F.2d at 978. In the 1978 amendments to the Rehabilitation Act, the Senate amendments to the House bill included a provision that any handicapped individual receiving State-administered vocational rehabilitation services would have certain procedural safeguards to protest any change in services. Included among these safeguards were arbitration and a right to judicial review of agency action. The Senate amendment would have prohibited any "civil action ... under this section for monetary damages." H.C.R. 95–1780, 95th Cong.2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 7379. The conference agreement, subsequently adopted, pared this procedural scheme down to ultimate review by the Secretary of Health and Human Services. *Id.;* P.L. 95–602, Title I § 103(2). This minor reference to "monetary damages," and its subsequent deletion by the conference committee, is scant evidence of a legislative intent to authorize all sorts of monetary damages in discrimination cases. *See Drummond Coal Co. v. Watt*, 735 F.2d 469, 474 (11th Cir.1984) ("Unexplained changes made in committee are not reliable indicators of congressional intent." (citing *Trailmobile Co. v. Whirls*, 331 U.S. 40, 61, 67 S.Ct. 982, 992, 91 L.Ed. 1328 (1947))).

See Martin v. Cardinal Glennon Mem. Hosp. for Children, 599 F.Supp. 284 (E.D. Mo.1984) (relying on Bradford v. Iron Co. C-4 School Dist., No. 82–303C(4), 1984 WL 1443 (E.D.Mo. June 13, 1984) (unpublished), another post-Miener ruling that held that § 504 does not permit monetary relief for mental anxiety, distress, humiliation, and embarrassment). Other lower courts, including one from this circuit, have made similar rulings. See Marshburn v. Postmaster Gen., 678 F.Supp. 1182, 1184 (D.Md.), aff'd mem. 861 F.2d 265 (4th Cir. 1988); see also Doe v. Southeastern Univ, 732 F.Supp. 7, 9–10 (D.D.C.1990) ("To hold that compensatory and punitive damages are available [under § 504] would be to engage in judicial activism."); Shuttleworth v. Broward County, 649 F.Supp. 35, 37–38 (S.D.Fla.1986); Flavin v. Connecticut Bd. of Educ., 553 F.Supp. 827, 833 (D.Conn.1982) (only "prospective equitable relief allowed" under § 504); Boxall v. Sequoia High School Dist., 464 F.Supp. 1104, 1112 (N.D.Cal.1979) (Title VI and § 504 "should probably be seen as creating a private supplement to government enforcement, not as providing a new entitlement to damages.").[5]

■ We think the legislative-intent approach yields the answer that § 504 and Title VI were not meant to create new species of statutory torts, complete with a full array of monetary remedies. Our inquiry is confined to divining what the words of the statute were meant to impart. Of course, the failure of Congress to spell out the explicit parameters of allowable relief in Title VI and, by extension, § 504 requires recourse to material beyond the words of the statute itself. Complementary anti-discrimination legislation strikes us as an appropriate starting point.

As Justice Marshall noted in his dissent in Guardian's, Title VII (42 U.S.C. § 2000e et seq.) is a useful guidepost in the Title VI analysis. Guardian's, 463 U.S. at 634, 103 S.Ct. at 3249 (Marshall, J., dissenting). Both were original components of the Civil Rights Act of 1964. Pub.L. 88–352, 78 Stat. 253 (1964). Title VII has consistently been limited to allow only equitable relief such as reinstatement, back pay, and injunctions against further violations. See Glezos v. Amalfi Ristorante Italiano, Inc., 651 F.Supp. 1271 (D.Md.1987) (compensatory or punitive damages not available under Title VII); see generally Annotation, Award of Compensatory Damages, Aside from Backpay or Frontpay, for Violation of Title VII of Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), 48 A.L.R. Fed. 338 (1980). The scope of Title VI extends beyond the employment arena, but this fact does not dilute the persuasive force of the Title VII/Title VI analogy. Both statutory schemes provide weapons against discriminatory practices, and the differences between the two do not argue for distinct approaches to damages. The considerable overlap of the two, e.g., racial discrimination claims against a federally-funded employer, militates in favor of a basic congruity of remedies. Nothing in the legislative history of Title VI points to any reason why the anti-discrimination statutes should not be treated similarly in this regard.

By the explicit statutory mandate of 29 U.S.C. § 794a(a)(2), § 504 should be similarly circumscribed. The Rehabilitation Act of 1973 was enacted nine years after Title VI, and the explicit incorporation of Title VI's remedial scheme came in 1978. Pub.L. No. 95–602 § 120, 92 Stat. 2982 (1978). Yet by 1978, there was only one reported case in which a Title VI plaintiff's right to compensatory damages, as that term encompasses damages for physical or

---

5. There is also a lack of consensus among the commentators. See Richards, Handicap Discrimination in Employment: The Rehabilitation Act of 1973, 39 U. of Ark.L.Rev. 1, 45–52 (1985); Solomon, Constraints on Damage Claims Under Title VI of the Civil Rights Act, 3 Law and Inequality 183 (1985) (advocating a theory of recovery by discriminatees as third-party beneficiaries of the contract between the federal government and recipients of federal funding); Comment, Compensating the Handicapped: An Approach to Determining the Appropriateness of Damages for Violations of Section 504, 1981 B.Y.U.L.Rev. 133 (1981). Note, Safeguarding Equality for the Handicapped: Compensatory Relief under Section 504 of the Rehabilitation Act, 1986 Duke L.J. 197.

emotional injury, had been recognized. *Gilliam v. City of Omaha,* 388 F.Supp. 842 (D.Neb.) ("monetary damages" held to be available in a Title VI action), *aff'd* 524 F.2d 1013 (8th Cir.1975). Our research also reveals one pre-amendment case, decided seven months prior to the enactment of the amendment, that held that Title VI did not provide a private litigant with a cause of action for damages for "mental distress." *Rendon v. Utah State Dept. of Emp. Sec.,* 454 F.Supp. 534 (D.Utah 1978). Adoption of the Title VI remedies, with this fourteen-year judicial track record, suggests that the Congress intended no radical expansion of available relief. *See Blitz v. Donovan,* 740 F.2d 1241, 1245 (D.C.Cir.1984) (Congress deemed to know judicial interpretation of statutes). We are constrained to reject plaintiff's argument that a broad damage remedy be read into the Act. It follows that punitive damages, being of a "non-equitable" nature, are also not recoverable. *See Doe v. Southeastern Univ.,* 732 F.Supp. at 10.

We hold, then, that § 504 of the Rehabilitation Act does not permit an award of compensatory damages for pain and suffering; also, punitive damages are not recoverable. Accordingly, we affirm the dismissal of the plaintiff's action.

AFFIRMED.

KISER, District Judge, concurring:

I would affirm the decision of the district court on the basis of its opinion, i.e., the action was barred by the applicable statute of limitations.