Jack C. CLEMES, Plaintiff,

v.

DEL NORTE COUNTY UNIFIED SCHOOL DISTRICT; Gene Edinger; Paul H. McCarthy; Debi Balzarini; Darlene Fosdick; and Karen Marcum, Defendants,

and

Commission On Professional Competence, Respondent,

and

Del Norte County Unified School District, Real Party in Interest.

No. C–93–1912 MHP (ENE).

United States District Court, N.D. California.

Jan. 25, 1994.

Christopher W. Katzenbach, Katzenbach & Khtikian, San Francisco, CA, for plaintiff.

Dorothy S. Landsberg, Kronick Moskovitz Tiedemann & Girard, John M. Laplante, Edson & Laplante, Sacramento, CA, for defendants.

## OPINION

PATEL, District Judge.

On July 12, 1993, plaintiff Jack Clemes brought suit against defendants Del Norte County Unified School District, Gene Edinger, Paul H. McCarthy, Debi Balzarini, Darlene Fosdick and Karen Marcum, alleging injuries arising from plaintiff's attempts to rectify certain improprieties that he witnessed on the part of the school district and its employees. Mr. Clemes sued under a host of statutes, including 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986; 42 U.S.C. § 2000d *et seq.* ("Title VI"); 20 U.S.C. § 1681 ("Title IX"); and 31 U.S.C. § 3730(h) ("False Claims Act"). Mr. Clemes also petitioned the court for a writ of mandamus to review an administrative hearing at which his employment was terminated.

Defendants have now moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint on the following grounds: 1) Mr. Clemes has no standing to bring an action based upon violations of Title VI or Title IX because he is not a member of a class protected by those statutes; 2) Mr. Clemes fails to state a claim under 42 U.S.C. §§ 1981, 1982, and 1985 because he is not a member of a class protected by those statutes; 3) Mr. Clemes' claims under 42 U.S.C. §§ 1983, 1985 and 1985 are barred by the Eleventh Amendment to the Constitution; 4) Mr. Clemes has not stated facts sufficient to establish a claim under the False Claims Act; and 5) Mr. Clemes' claims under 42 U.S.C. §§ 1983, 1985 and 1986 are barred by the statute of limitations.

Defendants have also moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Mr. Clemes' claim for a writ of mandamus for lack of subject matter jurisdiction.

Having read and considered the arguments and submissions of the parties, and for the reasons set forth below, the court issues the following memorandum and order.

## BACKGROUND [1]

Mr. Clemes was a teacher in the Del Norte County Unified School District ("District") for approximately 25 years. In 1989 he was assigned as teacher, and at various times designated Coordinator, for the Independent Studies Program. The Independent Studies

---

1. The following facts are undisputed by the parties, except as otherwise noted.

Program was established by the District to provide educational services to students outside of the formal educational structure of the schools maintained by the District. A substantial number of the students enrolled in the program were Native Americans. The students were also predominantly female. The program was funded with both federal and state education monies.

Mr. Clemes alleges that around September 1990 he learned from the parents of some of the Independent Studies students that the other teacher for the Program, defendant Debbie Balzarini, was not teaching the students assigned to her. Upon investigation Mr. Clemes alleges that he discovered that defendant Balzarini was making false entries in student records and forging the signatures of students and parents on Independent Studies Program documents, including records of teaching sessions for students and contracts for the Independent Studies Program teaching services. Mr. Clemes reported this activity to defendant Paul McCarthy, principal in charge of the Independent Studies Program, and to defendant Gene Edinger, superintendent of the Del Norte School District.[2]

Mr. Clemes alleges in essence that Mr. McCarthy and Mr. Edinger told him to mind his own business and stop reporting on illegal activities of his colleagues. After that, according to Mr. Clemes, both Mr. McCarthy and Mr. Edinger aided and assisted Ms. Balzarini's fraud with the intent of allowing the District to collect state and federal financial assistance for educational services under false pretenses.

Mr. Clemes subsequently took his complaints about defendant Balzarini, as well as defendants McCarthy and Edinger, to the office of the District Attorney for Del Norte County and to the Department of Justice. This led to Mr. Clemes' testimony before a Del Norte County grand jury about the forgeries and fraud, apparently to consider issuing indictments against some of the defendants now before this court. From the facts presented to this court it appears that no indictments issued. Mr. Clemes maintains

that the District Attorney withheld the majority of Mr. Clemes' documentation from the tribunal, such that the grand jury failed to appreciate the true scope of the fraud involved.

Mr. Clemes also advised the Governing Board of the District of the alleged misconduct. Mr. Clemes maintains that the Governing Board has refused to review or consider the evidence of the fraud.

Finally, in January 1993 Mr. Clemes filed a complaint with the Office of Civil Rights, United States Department of Education, alleging discrimination by the District against Native Americans, minorities and females in educational programs.

From August 31, 1992 through November 4, 1992, the District, through the Commission on Professional Competence, held adversary administrative hearings before a three-person panel to consider whether to terminate Mr. Clemes' employment. Mr. Clemes maintains that the hearings failed to provide him with due process. On April 23, 1993 Mr. Clemes was terminated from employment with the District.

Mr. Clemes alleges that some or all of the defendants improperly attempted to influence the investigations conducted by the above administrative and judicial bodies. Briefly, Mr. Clemes alleges that the District concealed evidence from the State Controller's office during an audit of the District and the Independent Studies Program; that defendant McCarthy improperly met in private with members of the grand jury; that defendant Edinger instructed or advised the members of the District's Governing Board not to review Mr. Clemes' evidence and to destroy the documents he provided; that agents of the District had ex parte communications with the chair of the Commission panel; and that the assistant to the chair of the Commission panel had improper conversations with the Office of Civil Rights and the investigator in charge of the investigation concerning Mr. Clemes' allegations. Mr. Clemes also alleges that certain defendants improperly attempted to influence him to remain silent about the

---

**2.** Plaintiff also alleges that defendant Balzarini was conducting a private business, known as the

"Diet Center," with the tacit approval of the District and defendants McCarthy and Edinger.

fraud, threatening among other things termination from his job.

As a result of Mr. Clemes' actions, some or all of the defendants allegedly subjected Mr. Clemes to discrimination and retaliation. These acts included: three charges of unprofessional conduct, pursuant to section 44938 of the California Education Code; placement on administrative leave, beginning January 1992; termination from employment; insertion of additional language on Mr. Clemes' application for house refinancing to the effect that his termination was "likely," thus resulting in denial of the loan; alteration of employment verification documents such that Mr. Clemes is unable to obtain a teaching credential in another state; and physical and verbal assaults. In addition, Mr. Clemes maintains that defendants caused the wrongful denial of ninety-six days of disability; caused injury to his property; interfered with the delivery of his mail; monitored his activities, mail and communications; encouraged others to make baseless complaints against him; and warned students that contact with Mr. Clemes would jeopardize receipt of their degrees.

As a consequence of the various acts allegedly taken against him, Mr. Clemes seeks damages to remedy the loss of wages and benefits, both past and future, and to remedy the damage to his reputation and standing in the community. He also seeks recompense for the humiliation, anxiety, mental suffering and distress that he has suffered; for his inability to refinance his home; and to cover the cost of litigation. In addition to damages, Mr. Clemes seeks the following equitable relief: 1) restoration of his employment as a teacher and restoration of any certificates or licenses lost as result of the defendants' action; 2) preliminary and permanent injunctions enjoining defendants from taking retaliatory or discriminatory actions against him; 3) other and further equitable relief to restore his reputation and to undo the harm and damage to his career, reputation and standing.

## LEGAL STANDARD

■ A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Ind., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied sub nom. Wyo. Community Dev. Auth. v. Durning,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

■ On any other motion to dismiss under Rule 12(b), the court may consider matters outside the pleadings, but must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *See* Fed.R.Civ.P. 12; *Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (considering the issue of standing). Each ground for dismissal will be considered in turn.

## DISCUSSION

### I. Standing

Defendants launch a generalized attack on Mr. Clemes' ability to sue for injuries incurred for seeking to vindicate the rights of female and minority students. Specifically, defendants challenge Mr. Clemes' standing to bring claims under Title VI and Title IX, arguing that because he is not himself the target of personal discrimination, he cannot sue under these provisions. In a related argument, defendants argue that Mr. Clemes has failed to state a claim under 42 U.S.C. §§ 1981, 1982, and 1985 because he is not a member of a class protected by those stat-

utes.[3] Although defendants frame this latter argument as a "failure to state a claim," it is essentially a standing argument and the court will consider it as such.

■ In order to have standing to assert statutory rights, a plaintiff must first meet the constitutional requirement of Article III that he have suffered injury-in-fact as a result of the allegedly illegal action. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982). Courts have also developed "prudential" standing requirements. For instance, a plaintiff generally must assert his own rights and interests and not those of third parties. *See Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975). While Congress may grant standing to those who would otherwise be barred by prudential considerations, it may not reduce the standing requirements below the constitutional minimum requirement. *See id.*

### A. *Title VI and Title IX*

■ Mr. Clemes is apparently claiming a violation of Title VI on the ground that his injuries stem from his attempts to vindicate the rights of students who are primarily Native Americans.[4] His Title IX claim apparently rests on the basis that the students are also primarily female.[5] Mr. Clemes does not allege that he was directly discriminated against because of *his* race or *his* sex. Although caselaw concerning standing under Titles VI and IX for those who are not themselves direct targets of discrimination is sparse, an analysis of available precedent under those provisions and under analogous provisions of the Civil Rights Act of 1964 reveals that Title VI and Title IX should properly be interpreted broadly with respect to standing.

In *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702 (2d Cir.), *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982), the Second Circuit upheld standing for an organization that sued under Title VI. The organization produced theatrical and artistic productions designed to reach the black and hispanic communities and claimed that county officials had denied it federally administered funds on the basis of racial animus. *Id.* at 703. The organization sued under Title VI, as well as under 42 U.S.C. §§ 1981, 1983, and 1985. The court upheld standing for the organization, reasoning that although the organization did not allege discrimination against it because of its own "race," it did allege discrimination against it because of the race of others with which it had a relationship. The court noted that the language of Title VI prohibits discrimination "on the ground of race" generally, and not specifically on the ground of race of the plaintiff. *Id.* at 705.

The provisions of Title IX are similarly broad, directing that "no person" may be discriminated against or denied benefits "on the basis of sex." 20 U.S.C. § 1681. As the Supreme Court has noted in interpreting Title IX, " 'if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language.' " *North Haven Board of Educ. v. Bell*, 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982) (holding that discriminatory employment practices are cognizable under Title IX) (citation and internal brackets omitted). Furthermore, courts have repeatedly noted the similarities between Titles VI and IX and have often looked to caselaw interpreting one provision as precedent in cases involving the second. *See, e.g., Cannon v. University of Chicago*, 441 U.S. 677, 694–96, 99 S.Ct. 1946,

---

**3.** Defendants in their moving papers did not make the latter argument with respect to 42 U.S.C. § 1985; they did however make this argument in their reply papers. The court therefore addresses this argument as well.

**4.** Title VI provides in relevant part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal assistance.

**5.** Title IX of the Education Amendments of 1972 provides in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

1956–57, 60 L.Ed.2d 560 (1979) (detailing similarities between the provisions).

Other decisions interpreting the analogous provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.* ("Title VIII" or "Fair Housing Act") are more plentiful, and likewise support the decision in *Hudson Valley. See Guardians Assoc. v. Civil Services Comm'n,* 463 U.S. 582, 634, 103 S.Ct. 3221, 3249, 77 L.Ed.2d 866 (1983) (Marshall, J., dissenting) (describing Title VII as a "useful guidepost" for a Title VI analysis); *see also Eastman v. Va. Polytechnic Inst. and State Univ.,* 939 F.2d 204, 208 (4th Cir.1991) ("nothing in the legislative history of Title VI points to any reason why the anti-discrimination statutes should not be treated similarly in [regard to remedies]."). For example, in *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), the Supreme Court upheld the standing of a white tenant who brought suit under section 810(a) of Title VIII, alleging discrimination by the owner of an apartment complex against nonwhite rental applicants. The Court reversed the lower court's holding that standing is limited to "persons who were objects of discriminatory housing practices." *Id.* at 208, 93 S.Ct. at 366. The Court noted that the provision at issue allowed suit by any "person aggrieved," which was elsewhere defined as "[a]ny person who claims to have been injured by a discriminatory housing practice." *Id.* The Court also based its holding on the legislative history and structure of the Act, both of which evidenced a congressional intent to encourage private enforcement of the Act's provisions. *Id.* at 209–11, 93 S.Ct. at 366–68. The Court concluded that Congress intended "to define standing [under Title VIII] as broadly as is permitted by Article III of the Constitution." *Trafficante,* 409 U.S. at 209, 93 S.Ct. at 367 (citing *Hackett v. McGuire Bros., Inc.,* 445 F.2d 442, 446 (3d Cir.1971)). The Court found the injury required by Article III in the damage stemming from the white plaintiff's inability to live in an integrated setting. *See Trafficante,* 409 U.S. at 211, 93 S.Ct. at 367–68.

In *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 103 n. 9, 99 S.Ct. 1601, 1607–08, 1609 n. 9, 60 L.Ed.2d 66 (1979), the Supreme Court extended this holding to 42 U.S.C. § 3612, another provision of Title VIII. Although that provision did not contain the same language allowing suit by any "person aggrieved," the Court nonetheless held that Congress had intended to define standing just as broadly as under the provision of the Fair Housing Act interpreted in *Trafficante. Id.* at 108–09, 99 S.Ct. at 1612–13. Accordingly, the Court held that standing under that provision was not limited to direct victims of discrimination. *See id.* at 115, 99 S.Ct. at 1615.

Circuit courts, including the Ninth Circuit, have made similar holdings for cases brought under Title VII. For instance, in *Waters v. Heublein, Inc.,* 547 F.2d 466 (9th Cir.1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977), the Ninth Circuit held that a white woman had standing to sue her employer for discrimination against blacks and hispanics, finding the case "logically indistinguishable" from *Trafficante. Id.* at 469. The court noted that *Trafficante* had itself relied on a Title VII case, *Hackett v. McGuire Bros., Inc.,* 445 F.2d 442 (3d Cir. 1971), in reaching its conclusion as to the standing of plaintiffs not directly discriminated against. The *Waters* court, similar to the *Trafficante* court, found the requisite injury for standing from the loss of associational benefits that would come from a racially integrated workplace. *Id.* at 469. *See also Chicano Police Officers Ass'n v. Stover,* 526 F.2d 431, 437 (10th Cir.1975) (indirect injuries stemming from discrimination against others can provide standing under Title VII), *vacated on other grounds,* 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976).

As the above cases indicate, courts have consistently found that Congress, in enacting the above civil rights provisions intended to extend standing under those provisions to a broad class of plaintiffs. There is no doubt that Mr. Clemes satisfies the absolute minimum requirement of Article III—that the plaintiff have suffered an injury-in-fact. Mr. Clemes has certainly alleged an injury; in

fact, he has alleged many. Those injuries would also certainly be redressed if he were granted the relief that he seeks. The court therefore holds that Mr. Clemes may proceed with his cause of action under both Title VI and Title IX.

· B. *42 U.S.C. §§ 1981, 1982, 1985*

■ Mr. Clemes' claims under these provisions of Title 42 are similar to his claims under Title VI and Title IX, in that he does not allege that he is himself a member of a class directly protected by these provisions, but instead alleges that he suffered injuries that stemmed from discrimination against the students, who, as Native Americans, do belong to a protected class. The issue before this court is, again, whether such a relationship is sufficient to confer standing on Mr. Clemes under 42 U.S.C. §§ 1981 [6], 1982,[7] and 1985.[8]

In *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the Supreme Court upheld the standing of a white man to sue under 42 U.S.C. § 1982 for injuries stemming from discrimination against a black man. Plaintiff Sullivan owned a house in a neighborhood in Virginia. Defendant, a corporation, operated a community park and playground for the benefit of nearby residents. A membership in the corporation entitled members and their families to use the recreational facilities. If a member leased his home, he could assign his membership to the tenant subject to approval from the corporation board. Sullivan bought a second home in the area and leased his first home to a black man. When he attempted to assign his membership to the black tenant, the corporation's membership objected to the assignment because the tenant was black. Sullivan protested and the board revoked both his memberships. *See id.* at 234–35, 90 S.Ct. at 403–04.

Sullivan sued under 42 U.S.C. §§ 1981 and 1982. The Court, discussing only section 1982, held that the plaintiff had standing to sue for his own expulsion from the corporation:

> If that sanction, backed by a state court judgment, can be imposed, then Sullivan is punished for trying to vindicate the rights of minorities protected by § 1902. Such a sanction would give impetus to the perpetuation of racial restrictions on property. That is why we said in *Barrows v. Jackson*, 346 U.S. 249, 259, 73 S.Ct. 1031, 1036, 97 L.Ed. 1586, that the white owner is at times "the only effective adversary" of the unlawful restrictive covenant. Under the terms of our decision in *Barrows*, there can be no question but that Sullivan has standing to maintain this action.

*Sullivan*, 396 U.S. at 237, 90 S.Ct. at 404.[9]

Although the *Sullivan* Court did not explicitly extend its holding that non-minorities

---

**6.** Section 1981 provides in relevant part:
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...."

**7.** Section 1982 provides:
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

**8.** Section 1985(2) and (3) provide in relevant part:
(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein ... or to injure such party ... in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court ...; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory ...
(3) If two or more persons in any State or Territory conspire or go in disguise ... on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**9.** Defendants are thus incorrect in asserting that the plaintiff's standing in *Sullivan* was premised on the his own right to convey property. The Court specifically stated that it was Sullivan's

may sue for injuries incurred trying to vindicate the rights of minorities to actions under section 1981, lower courts have done so. For instance, in *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir.), *reh'g denied*, 520 F.2d 409 (2d Cir.1975), the Second Circuit upheld standing for a white man under section 1981 who alleged that his employer forced him into retirement for selling his house to a black man.[10] *See also Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1446–47 (10th Cir.1988) (upholding standing under section 1981 for white man fired for helping black employee bring EEOC claim). As the Sixth Circuit stated in the case of an white employee fired for protesting the termination of a black employee, "although [plaintiff] was not fired because of his race, it was a racial situation in which he became involved that resulted in his discharge...." *Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266, 1268 (6th Cir.1977). The court held this was sufficient to state a cognizable claim under section 1981.[11]

The Ninth Circuit has not addressed this issue at length. In *Halet v. Wend Investment Co.*, 672 F.2d 1305 (9th Cir.1982), the Ninth Circuit refused to extend standing to a white man suing for racial discrimination under 42 U.S.C. §§ 1981, 1982, and 1983. The plaintiff in *Halet* alleged that an apartment complex's "adults-only" policy violated his right to live with his family and was racially discriminatory, since it impacted minorities to a greater extent than non-minorities. In a brief paragraph, the Ninth Circuit held that the plaintiff had no standing to raise the claims of racial discrimination. *Id.* at 1308. Finding that plaintiff was "in no better position to bring this action" than a minority family, the Ninth Circuit, citing *Sullivan*, held that the plaintiff had no standing. *Id.*

Although *Halet* appears to interpret *Sullivan* somewhat more restrictively than other circuits, it is still clear that Mr. Clemes has standing to bring the instant action under 42 U.S.C. §§ 1981 and 1982. Even assuming that *Halet* stands for the proposition that a non-minority plaintiff may bring suit under 42 U.S.C. §§ 1981 or 1982 *only* where there is no minority plaintiff who could do so, Mr. Clemes clearly meets that criteria.[12] In the words of *Halet*, Mr. Clemes is asserting "[his] own rights and interests"; he claims he was personally injured by defendants' discriminatory acts. *Halet*, 672 F.2d at 1308. The injuries that he alleges and for which he seeks redress are all injuries that are personal to him: humiliation and suffering, loss of

expulsion from the corporation for attempting to vindicate minorities' rights that gave him standing.

**10.** The Second Circuit noted that although the Supreme Court in *Sullivan* rested its holding on 42 U.S.C. § 1981, the similar language and history of that provision and 42 U.S.C. § 1982 suggest that the two provisions should be read consistently. *DeMatteis*, 511 F.2d at 312 n. 9.

**11.** Courts considering analogous situations under 42 U.S.C. § 1983 have likewise upheld standing for non-minority plaintiffs. *See, e.g., Wilson v. City of N. Little Rock*, 801 F.2d 316 (8th Cir.1986) (injury arising from commercial relationship); *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983) (injury arising from prospective relationship); *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9 (1st Cir.1979) (injury arising from prospective relationship); *see also Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F.Supp. 1341, 1355 (D.Md.1989) (collecting cases).

**12.** It is unclear whether *Halet* should in fact be interpreted so restrictively. In a later case involving standing under Title VII and under 42 U.S.C. §§ 1981 and 1985(3), the Ninth Circuit noted that " '[t]he guarantees of § 1981 and Title VII against racial discrimination are coextensive....'" *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019, 1022 (9th Cir.1983) (citation omitted). Given that the Ninth Circuit has explicitly extended standing to non-minorities under Title VII, *see supra*, the *Gomez* case would tend to lend support to the argument that section 1981 must also be interpreted as incorporating a broad definition of standing.

Moreover, *Sullivan* itself does not appear to support a restrictive interpretation of standing under section 1982. Although *Sullivan* quoted from another case in which the white plaintiff was "the only effective adversary," the Court did not *limit* standing to such situations. *Sullivan*, 396 U.S. at 237, 90 S.Ct. at 404 (quoting *Barrows v. Jackson*, 346 U.S. at 259, 73 S.Ct. at 1036). In *Sullivan*, after all, the black man to whom Sullivan attempted to convey his corporation membership was also a plaintiff; the white plaintiff was not the only potential litigant. *See also Winston*, 558 F.2d at 1270 (upholding the standing of a white man fired for protesting the discriminatory firing of a black co-worker, despite the fact that the black co-worker had himself also brought suit.).

job and reputation. Clearly none of the students who were allegedly direct targets of discrimination would have standing to bring these claims. It is true that these students could themselves bring suit to redress the discrimination against them, just as the minority tenants in *Halet* could have brought suit to stop the discrimination against them. Unlike the putative plaintiff in *Halet,* however, Mr. Clemes' suit springs from a different injury—namely, the retaliation against him for seeking to vindicate the rights of others. This injury stems from the defendants' discrimination, yet it cannot be redressed by the direct targets of that discrimination. Mr. Clemes is the only effective plaintiff to bring this suit and thus this court finds that he is a proper plaintiff under 42 U.S.C. §§ 1981 and 1982.[13]

On the other hand, the Ninth Circuit has clearly held that in order to bring an action under the conspiracy provision of 42 U.S.C. § 1985, a plaintiff must be a member of a protected class. In *Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711 (9th Cir.), *cert. denied,* 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981), the Ninth Circuit refused to extend standing under 42 U.S.C. § 1985(3) to a group of non-minority plaintiffs. In that case, a group of sheriff's deputies sought to bring suit against an unincorporated "posse" that had been attempting to stop labor organizers from organizing. In attempting to do so, the members of the posse had fired on the deputies. The deputies filed suit under section 1985(3), claiming that the defendants conspired against them,

motivated by class-based animus against the members of labor organizations. The Ninth Circuit held that it need not decide whether labor organizations were a protected class under that provision because plaintiffs themselves were not a member of the protected class:

> The law of this circuit is clear: the plaintiff must be a member of the class discriminated against to claim the benefits of § 1985(3).

*Id.* at 721.

Therefore, Mr. Clemes has no standing to bring suit under 42 U.S.C. § 1985(3) for injuries he sustained as a result of class-based animus against others. The provisions of section 1985(2), under which Mr. Clemes also sues, are substantially identical to the provisions of section 1985(3), and this court sees no reason to construe the two provisions differently with respect to standing. The court thus also holds that Mr. Clemes has no standing to proceed under 42 U.S.C. § 1985(2).

Defendants did not specifically challenge Mr. Clemes' standing to sue under 42 U.S.C. § 1986.[14] However, no cause of action under 42 U.S.C. § 1986 will lie unless a cause of action under 42 U.S.C. § 1985 can be established. *See, e.g., Jews for Jesus v. Jewish Comm'n Relat. Council,* 968 F.2d 286 (2d Cir.1992). Because this court dismisses Mr. Clemes' claim under section 1985, it also dismisses his claim under section 1986.

**13.** Defendants seek to dismiss Mr. Clemes' claim under 42 U.S.C. § 1982 only on the basis that he is not a direct target of discrimination. Although the court finds this argument unpersuasive, it notes that it seems doubtful that Mr. Clemes has alleged facts to support a claim under section 1982 in any case. That provision ensures equal treatment to "inherit, purchase, lease, sell, hold, [or] ... convey real and personal property." Presumably, Mr. Clemes' cause of action under this statute is based on his allegation that defendants' actions against him resulted in his inability to re-finance his house. At most this allegation, if proven, would show that defendants interfered with Mr. Clemes' right to contract, an injury that would give him standing under section 1981, not section 1982. Because defendants have not moved to dismiss on this basis, the court will not reach the section 1982 claim in

this order. However, given this observation plaintiff should consider the wisdom of proceeding on this claim and whether the injuries he seeks to redress are not adequately addressed by his other causes of action.

**14.** Section 1986 provides in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

## II. *42 U.S.C. § 1983*

Defendants next argue that plaintiff's claim under 42 U.S.C. § 1983[15] is barred by the Eleventh Amendment and by the statute of limitations.

### A. *The Eleventh Amendment*

■ The Eleventh Amendment bars federal court suits that seek retrospective money damages against state agencies. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). Defendants argue that all of the defendants are "state agencies" for purposes of the Eleventh Amendment, and thus that Mr. Clemes' claims against them are barred.

The school district is clearly a state agency. In *Belanger v. Madera Unified School Dist.,* 963 F.2d 248 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993), the Ninth Circuit squarely held that a school district in California was a state agency for eleventh amendment purposes.[16] Mr. Clemes argues that notwithstanding *Belanger,* the school district in this case is not a state agency, since one factor relevant to the question of whether an entity is an agency of the state—namely whether a money judgment would be satisfied from state funds—is different here than in *Belanger.* In fact, the *Belanger* court stated that whether one knew if the judgment would be paid from state funds or local funds or a combination of both was immaterial in California since the state's centralized school funding system commingles state and local revenues in a common fund under state control. *Id.* at 251–52.

The individual defendants also clearly fall within the scope of the Eleventh Amendment. State officials sued in their official capacity enjoy the same eleventh amendment protection as is afforded to states. Although literally persons, "a suit against a state official is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). "As such, it no different from a suit against the State itself." *Will,* 491 U.S. at 71, 109 S.Ct. at 2311. As the District is a state agency, to the extent to which Mr. Clemes seeks to sue the individually named defendants in their official capacity for retrospective relief, those claims are also barred by the eleventh amendment. On the basis of Mr. Clemes' complaint, this court finds that all defendants are sued in their official capacities.

■ Mr. Clemes argues that, even if the Eleventh Amendment does apply to these defendants, Congress has waived this immunity for actions under 42 U.S.C. § 1983. Mr. Clemes is correct in asserting that Congress may waive Eleventh Amendment immunity, but is incorrect in asserting that it has done so with respect to suits under section 1983. If Congress wishes to abrogate Eleventh Amendment immunity, it must do so unequivocally. *See Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989). Mr. Clemes argues that the 1987 Civil Rights Restoration Act, 100 Stat. 1845, provides such an unequivocal statement.[17] As part of that Act, Congress

**15.** Section 1983 provides in relevant part:

Any person who, under color [of law causes] any citizen of the United States ... to [be] depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**16.** The Ninth Circuit applied the *"Mitchell* test" in making its determination as to whether an entity is a state agency for eleventh amendment purposes. *See Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1988), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104

L.Ed.2d 663 (1989). The five factors enumerated in *Mitchell* are:

■ whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity. *Mitchell,* 861 F.2d at 201 (citing *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir.1982)).

**17.** Prior to the enactment of this provision, the Supreme Court had ruled that the Eleventh Amendment bar applies to suits against the state

added the following amendment to the Rehabilitation Act:

> A State shall not be immune under the Eleventh Amendment of the constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972 ... title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d. Because the Independent Studies Program receives federal funds, reasons Mr. Clemes, his suit under section 1983 may proceed.

The circuits which have considered whether this amendment abrogates immunity for suits under section 1983 have clearly found to the contrary. As stated in *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765 (7th Cir.1991), "[s]ection 1983 is a different creature than the three statutes listed in [2000d–7] ... [u]nlike these statutes, § 1983 does not specifically prohibit discrimination by recipients of federal financial assistance...." *Id.* at 768. The court thus held that section 2000d does not provide the type of clear congressional statement necessary to abrogate Eleventh Amendment immunity. *See id.; see also Cone Corp. v. Florida Dep't of Transportation*, 921 F.2d 1190, 1201 n. 37 (11th Cir.) (affirming that Eleventh Amendment bars suit under 42 U.S.C. § 1983 but not under 42 U.S.C. § 2000d), *cert. denied*, —— U.S. ——, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991). This court agrees with those courts that have concluded that section 2000d–7 does not strip states of the immunity provided by the Eleventh Amendment for suits under 42 U.S.C. § 1983.

■■■■ Defendants are therefore correct that all of the defendants fall under the Eleventh Amendment. This fact alone is insufficient, however, to dismiss plaintiff's claims. The Eleventh Amendment bar ex-

tends only to suits for retrospective relief; injunctive relief is permissible since "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). Mr. Clemes seeks back pay, compensatory and punitive damages. These forms of relief are all retrospective and therefore are barred. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Sauceda v. Wash. Dept. of Labor & Ind.*, 917 F.2d 1216, 1218 (9th Cir.1990). Mr. Clemes also seeks reinstatement, however, which is an equitable remedy and is therefore permissible.[18] The only appropriate defendants against whom Mr. Clemes may seek relief on this claim are defendant Edinger and defendant McCarthy.

Accordingly, Mr. Clemes' claim under 42 U.S.C. § 1983 against the District and against individual defendants Balzarini, Fosdick, and Marcum are dismissed in their entirety. Mr. Clemes is given leave to amend, however, in order to allege that these individually named defendants are liable in their individual capacity. Mr. Clemes is also given leave to amend his complaint in order to allege that defendants Edinger and McCarthy are liable in their individual capacity, should he so desire.

### B. *Statute of Limitations*

■■■■ Defendants have also moved this court to dismiss Mr. Clemes' section 1983 claim as barred by the statute of limitations. Where Congress has not established a time limitation for a federal cause of action, federal courts rely on state law to determine the length of the statute of limitations. *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 318 (9th Cir.1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 546 (1992). Applying relevant California law, the statute of limitations for plaintiffs' federal civil rights claims is one

---

or state officials which arise under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 339, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979).

**18.** Mr. Clemes also seeks attorneys' fees. To the extent that these fees are related to his seeking of

injunctive relief, he is not categorically barred from recovery. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979).

year. *See McDougal v. County of Imperial,* 942 F.2d 668, 672–74 (9th Cir.1991).

While it is true that certain of the alleged discriminatory acts in Mr. Clemes' complaint occurred in January 1992, more than a year before the filing of the complaint on May 21, 1993, under California's equitable tolling doctrine the statute may be tolled pending the pursuit of a formal legal remedy. *Donoghue v. Orange Co.,* 848 F.2d 926, 930 (9th Cir. 1987). The pursuit of an administrative hearing constitutes such a remedy. *Id.* at 931. If there is "timely notice [in filing the first claim], lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff," the statute is properly tolled. *Donoghue,* 848 F.2d at 931 (quoting *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983)).

As there is no dispute by the defendants that these criteria have not been met in the instant case, and as the administrative hearings took place from August 31, 1992 to November 4, 1992, less than a year from filing the complaint on May 23, 1993, this court declines to dismiss Mr. Clemes' section 1983 claim as time-barred.

### III.  *False Claims Act*

██ Mr. Clemes also seeks relief under 31 U.S.C. § 3730(h), a provision of the False Claims Act. The False Claims Act sets up an elaborate mechanism by which private citizens may bring so-called "*qui tam* suits" on behalf of the government against defendants who have defrauded the government. *See* 31 U.S.C. § 3729 *et seq.* Section 3730(h), the provision under which Mr. Clemes has filed, provides relief for any employee who is retaliated against "because of lawful acts done by the employee ... in furtherance of

an action under this section." [19] The relief available includes reinstatement, back pay and attorneys' fees.

Defendants argue that because Mr. Clemes has not met any of the procedural requirements set forth in section 3730(b) or filed a *qui tam* suit against defendants, he is therefore not covered by the protections of section 3730(h). This court does not believe that Congress intended for this section to be read so restrictively. To begin with, the language of section 3730(h) states broadly that it covers retaliation for acts done "in furtherance of an action under this section." There is certainly no requirement in the language of the statute itself that a plaintiff have exhausted all of the requirements of section 3730(b) or have actually filed a *qui tam* suit.

Furthermore, such a narrow reading would be inconsistent with the purposes of the False Claims Act. Congress enacted the False Claims Act in order to discourage fraud against the government and to encourage persons with knowledge of fraud to come forward. *See* H.R.Rep. No. 660, 99th Cong., 2d Sess., 22 (1986). It would be inconsistent with these dual goals to impose upon section 3730(h) some sort of exhaustion requirement, as defendants appear to urge. Whistleblower statutes have traditionally been broadly construed, *see Neal v. Honeywell, Inc.,* 826 F.Supp. 266, 270 (N.D.Ill.1993), and this court sees no reason to break from tradition in this instance in order to read the statute in a manner which its plain language does not support. Other courts to consider the issue have reached the same conclusion that the retaliation provisions of the False Claims Act are available to whistleblowers whether or not they have pursued a *qui tam* action or

---

**19.** The False Claims Act, 31 U.S.C. § 3730(h) provides in its entirety:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to

all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

taken the steps outlined in 31 U.S.C. § 3730(b). *See id.; see also United States ex rel. Kent v. Aiello*, 836 F.Supp. 720 (E.D.Cal. 1993), 93 Daily Journal D.A.R. 16611.

For purposes of this motion, it is unnecessary to delineate the exact reach of section 3730(h). Mr. Clemes alleges that he brought evidence of fraud against the government to the attention of his immediate supervisors, as well as to state officials and the Department of Justice. On the basis of these facts, this court is unable to say that Mr. Clemes can prove no set of facts that would entitle him to relief under 31 U.S.C. § 3730(h). Therefore defendants' motion to dismiss must be denied.

## IV. *Writ of Mandamus*

■ Mr. Clemes seeks in his complaint a writ of mandamus to review the administrative decision of the Commission on Professional Competence. California Code of Civil Procedure § 1094.5 unquestionably provides for the right to judicial review of a statutorily mandated administrative order or decision. *Boren v. State Personnel Board*, 37 Cal.2d 634, 637, 234 P.2d 981 (1951). However, this is a state remedy, not a federal remedy. This court therefore has no jurisdiction to hear this claim.

## V. *Supplemental Jurisdiction*

Apparently realizing that many of his claims are untenable in federal court, Mr. Clemes attempts to persuade this court to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in order to have these claims heard in this forum nonetheless.[20] Section 1367(c) sets forth the occasions when it is appropriate for a federal court to decline to exercise supplemental jurisdiction:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

■ Mr. Clemes first argues that this court should exercise supplemental jurisdiction to hear his claim for a writ of mandamus. Subsections (1) and (4) of section 1367, cited above, both provide reasons to decline supplemental jurisdiction over Mr. Clemes' state mandamus claim. Mandamus proceedings to compel a state administrative agency to act are actions that are uniquely in the interest and domain of state courts. It would be entirely inappropriate for a federal court, through exercise of its supplemental jurisdiction, to impose itself upon such proceedings. Considerations of federalism and comity, not generally present with typical "pendent" state claims, loom large in the case of state mandamus proceedings. Accordingly, the court declines to exercise supplemental jurisdiction over this claim.

■ At the hearing on this motion, plaintiff appeared to make an even more astonishing argument with regard to supplemental jurisdiction and the eleventh amendment bar to plaintiff's section 1983 claim. Plaintiff's argument is that although suits under 42 U.S.C. § 1983 cannot be brought against states in federal court, they can be brought in state court. Such a claim in state court, the argument runs, is a "state claim." The final step in this amazing feat of illogic is the argument that the federal court can, by exercising supplemental jurisdiction, bring the claim back to federal court—a section 1983 claim against the state for money damages in federal court.

This argument is so frivolous it is hard to know where to attack it first. To begin with, "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment

---

**20.** Section 1367(a) states in relevant part:
in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

immunity, are not subject to suit under § 1983 in *either* federal court or state court." *Howlett By and Through Howlett v. Rose,* 496 U.S. 356, 365, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990) (emphasis added). More importantly, plaintiff's argument turns supplemental jurisdiction, a mere procedural tool, into a weapon to obliterate the Eleventh Amendment. As noted above, the Supreme Court has held that Eleventh Amendment immunity is not to be abrogated absent a clear unequivocal statement by Congress. *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989). No such language is to be found in section 1367. Congress enacted section 1367 as part of the Judicial Improvements Act, for the purpose of allowing litigants to economically resolve related matters in a single forum. Judiciary Comm., H.R.Rep. No. 101–734, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6874. This effort to streamline procedural aspects of judicial access does not in any way support the substantive alteration of Eleventh Amendment jurisprudence.

Therefore, this court refuses Mr. Clemes' invitation to make an end-run around the eleventh amendment by twisting the supplemental jurisdiction statute to bring his claim under 42 U.S.C. § 1983 back into federal court.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1) that defendants' motion to dismiss plaintiff's claims arising under 42 U.S.C. §§ 1985 and 1986 is GRANTED;

2) that defendants' motion to dismiss plaintiff's claims arising under 42 U.S.C. §§ 1981 and 1982, and under Title VI and Title IX is DENIED;

3) that defendants' motion to dismiss plaintiff's claim under 42 U.S.C. § 1983 is GRANTED as to defendants Del Norte School District, Balzarini, Fosdick, and Marcum, and DENIED as to defendants Edinger and McCarthy;

4) that defendants' motion to dismiss plaintiff's claim arising under the False Claims Act is DENIED;

5) that defendants' motion to dismiss plaintiff's motion for a writ of mandamus is GRANTED.

Plaintiff is granted leave to amend his claim under 42 U.S.C. § 1983 to allege that the individually named defendants are liable in their individual capacity.

IS SO ORDERED.